**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Woodrow BALLARD, Appellant.**

Superior Court of Pennsylvania.

Submitted May 20, 2002.

Filed Sept. 3, 2002.

Jason S. Garber, Public Defender, Doylestown, for appellant.

Diane E. Gibbons, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before McEWEN, P.J.E., CERCONE, P.J.E., and OLSZEWSKI, J.

OLSZEWSKI, J.

¶ 1 Woodrow Ballard appeals from the December 4, 2001, judgment of sentence entered following his conviction for, *inter alia*, possession of a controlled substance and possession of a controlled substance with intent to deliver. We affirm.

¶ 2 In the early morning hours of August 23, 2001, appellant drove his red Chevrolet Cavalier at excessive speeds down Lincoln Highway in Falls Township, Bucks County. His right front tire was flat, and the rim of the wheel scraped the roadway causing sparks and control problems. At the time, Officer Raymond Fanelli was monitoring passing motorists from a nearby parking lot. He heard the commotion from appellant's car and then observed him pass at approximately 90 miles per hour in the highway's 40–mile–per–hour zone.

¶ 3 Officer Fanelli followed the vehicle and eventually pulled appellant over for his erratic driving and numerous other traffic violations. From his patrol car, Fanelli instructed appellant to place his hands on his head. Appellant initially complied, but after several moments he began reaching for something on the front or rear passenger seat. Then, without warning, he opened the door and fell out onto the road. Officer Fanelli approached the vehicle in order to secure appellant and smelled a strong marijuana odor coming from inside. He proceeded to handcuff appellant and place him in the backseat of his patrol car.

¶ 4 Additional officers, including Brian Dietrich and Gregory Small, responded to the scene and also detected the smell of marijuana from appellant's car. Both of these officers were trained to recognize marijuana and had on-the-job experience

with the drug. Officer Dietrich looked into the backseat through the rear passenger side window and observed a whitish/semi-translucent grocery bag containing two clear plastic bags. Although he only saw two and a half square inches of these clear bags, he recognized the green leafy substance inside to be marijuana.

¶ 5 Officer Dietrich then alerted the other officers of his discovery. Officer Small approached the passenger side of the car and also saw the two plastic bags full of marijuana. When Sergeant Irving McElroy, the shift supervisor, arrived at the scene, Officer Dietrich pointed out the package. McElroy testified that when he looked inside the car, he also saw the two clear bags of marijuana, but that they were in a red tote bag rather than a semi-translucent bag. N.T., 12/04/01, at 54. Despite this dispute over the color of the outer bag, all of the officers testified to seeing clear bags of marijuana on the backseat before Officer Dietrich entered the car and seized the drugs. *Id.* at 32, 44–45, 54. Sergeant McElroy specifically stated that the tote bag did not obstruct his view of the marijuana. *Id.* at 56, 60.

¶ 6 Officer Dietrich subsequently removed the marijuana and the red bag and Sergeant McElroy photographed these items together on the hood of the car. Based on this evidence, appellant was charged with possession of a controlled substance and possession of a controlled substance with intent to deliver.

¶ 7 Appellant filed a pre-trial motion to suppress the marijuana as fruit of an unconstitutional search under the Fourth Amendment of the United States Constitution and Article I, Section 8 of the Pennsylvania Constitution. The trial court denied this motion on the ground that the plain view doctrine authorized the warrantless search and seizure. The judge reasoned that appellant had no reasonable expectation of privacy in the bags of marijuana since the officers could see them from outside the car. On December 4, 2001, after a waiver trial, the judge convicted appellant on all drug-related charges. Appellant filed the instant appeal challenging the lower court's denial of his motion to suppress the evidence.

¶ 8 In considering the denial of a suppression motion, our standard of review is well settled. We must "determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from these findings." *Commonwealth v. Ayala,* 791 A.2d 1202, 1207 (Pa.Super.2002). In doing so, we "may consider only the prosecution's [evidence]" and the defendant's evidence to the extent it is not contradictory. *Id.* If the evidence presented at the suppression hearing supports these findings of fact, we may not reverse the lower court unless its accompanying legal conclusions are in error. *Commonwealth v. Lohr,* 715 A.2d 459, 461 (Pa.Super.1998).

¶ 9 The Fourth Amendment to the United States Constitution and Article 1, Section 8 of the Pennsylvania Constitution protect individuals from unreasonable searches and seizures, thereby ensuring the "right of each individual to be let alone." *Schneckloth v. Bustamonte,* 412 U.S. 218, 236, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Commonwealth v. Blair,* 394 Pa.Super. 207, 575 A.2d 593, 596 (1990). Specifically, police officers may not conduct a warrantless search or seizure unless one of several recognized exceptions applies. *Schneckloth,* 412 U.S. at 219, 93 S.Ct. 2041; *Blair,* 575 A.2d at 596–97.

¶ 10 The plain view doctrine permits the warrantless seizure of evidence in plain view when: (1) an "officer views [the] object from a lawful vantage point"; and

(2) it is "immediately apparent" to him that the object is incriminating. *Commonwealth v. Petroll,* 558 Pa. 565, 738 A.2d 993, 999 (1999). Our Supreme Court has expressly recognized that incriminating objects "plainly viewable [in the] interior of a vehicle" are in "plain view" and, therefore, subject to seizure without a warrant. *Commonwealth v. Colon,* 777 A.2d 1097, 1103 (Pa.Super.2001) (citing *Commonwealth v. Milyak,* 508 Pa. 2, 493 A.2d 1346, 1348 (1985)). This doctrine rests on the principle that an individual cannot have a "reasonable expectation of privacy in an object that is in plain view." *Petroll,* 738 A.2d at 999.

■■ ¶ 11 In determining "whether the incriminating nature of an object [is] immediately apparent to the police officer," we look to the "totality of the circumstances." *Id.* An officer can never be one hundred percent certain that a substance in plain view is incriminating, but his belief must be supported by probable cause. *Commonwealth v. Ellis,* 541 Pa. 285, 662 A.2d 1043, 1049 (1995).

■ ¶ 12 We note that if a defendant's initial detention violates the Fourth Amendment, then any evidence seized during that stop must be excluded as fruit of an unlawful detention. *See Commonwealth v. Strickler,* 563 Pa. 47, 757 A.2d 884, 889 (2000). In this case, however, appellant does not challenge the constitutionality of Officer Fanelli's decision to stop his vehicle. Therefore, we focus solely on the constitutionality of the officers' conduct in seizing marijuana from appellant's car.

■ ¶ 13 After thoroughly reviewing the officers' testimony, we conclude that the seizure of this evidence falls squarely within the plain view doctrine and does not violate appellant's federal or state constitutional rights. The uncontroverted testimo-

ny demonstrates that the police officers viewed the marijuana from a lawful vantage point outside the car. Officers Dietrich and Small and Sergeant McElroy all testified that they stood outside the car and looked into the rear passenger window. N.T., 12/04/01, at 32, 44–45, 54. On the backseat, they saw two clear bags of marijuana inside another larger bag. Appellant did not have a legitimate expectation of privacy in the carrying bag since any bystander could have looked into it and seen the drugs. *See Colon,* 777 A.2d at 1103–04.

¶ 14 The totality of the circumstances also demonstrates that the officers immediately recognized the incriminating nature of what was inside these clear bags. All of the officers received training in how to identify narcotics, including marijuana, and had encountered it in the course of their jobs. Although they were only able to see a small portion of the clear plastic bags, they all saw a green leafy substance they recognized to be marijuana. The strong smell of marijuana emanating from the car further supported their conclusion. Taken together, these circumstances constitute probable cause and are sufficient to establish that the incriminating nature of the bags' contents was immediately apparent.

¶ 15 Appellant argues that the record does not support the trial court's findings of fact, because the officers testified inconsistently with one another. Specifically, he argues that the officers' disagreement concerning the color and material of the outer bag proves that Officer Dietrich entered the car and tampered with the evidence to make the bags of marijuana more visible to the other officers. We cannot agree with this far-fetched assumption. The minor discrepancy in testimony does not change the fact that all of the officers who looked into the car identified the substance

as marijuana and did so from a lawful vantage point.

¶ 16 Judgment of sentence affirmed.

¶ 17 CERCONE, P.J.E., notes his dissent.